# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**GERALD STEWART**

**CIVIL ACTION**

**VERSUS**

**NO. 16-15860**

**SANDY MCCAIN, WARDEN**

**SECTION: "G"(5)**

## REPORT AND RECOMMENDATION

This matter was referred to the undersigned United States Magistrate Judge to conduct a hearing, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C), and as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts.    Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing. *See* 28 U.S.C. § 2254(e)(2).    For the following reasons, **IT IS RECOMMENDED** that the petition for habeas corpus relief be **DISMISSED WITH PREJUDICE**.

## Factual and Procedural History

Petitioner, Gerald Stewart, is a convicted inmate incarcerated at the Raymond Laborde Correctional Center in Cottonport, Louisiana.    On July 13, 2011, he was charged with one count of possession of heroin.[1]    He chose to proceed with a bench trial, during which the following facts were adduced, as summarized by the appellate court on direct

---

[1] State Rec., Vol. 1 of 4, Bill of Information.

appeal:

> At trial, Officer Everett Briscoe testified that on July 3, 2011, he and his partner, Officer Jon–Rene Sanjurjo, were dispatched to the parking lot of the Rally's on South Carrollton in Orleans Parish to investigate a single-car accident with injury. Upon arrival the officers attempted to render aid to the driver of the car, Ryan Couget,[2] who was unconscious in the car.

> After EMS personnel arrived, Officer Briscoe spoke with a Rally's employee.[3] The employee pointed out Mr. Stewart, who was walking away from the scene. Officer Briscoe approached Mr. Stewart and asked him where the items that he retrieved from the vehicle were. Mr. Stewart took Officer Briscoe to the passenger side of the vehicle and told the officer that he threw the items on the ground. Officer Briscoe saw a couple of empty pieces of foil lying on the ground next to the car. Once the officer determined that narcotics were possibly involved, he decided to detain Mr. Stewart until they finished the investigation. As Officer Briscoe was placing Mr. Stewart in handcuffs, the officer noticed that Mr. Stewart had something clutched in his hand. Officer Briscoe asked Mr. Stewart what was in his hand. Mr. Stewart then threw down a napkin, which contained pieces of aluminum foil. Officer Briscoe secured Mr. Stewart in his police unit while Officer Sanjurjo retrieved the napkin and foils. The foils appeared to contain heroin. Mr. Stewart was ultimately arrested.

> On cross-examination, Officer Briscoe testified that Mr. Stewart was one of the people gathered around Mr. Couget's car when they arrived. Officer Briscoe did not suspect Mr. Stewart of any wrongdoing at that time. Officer Briscoe admitted that at the suppression hearing he testified that Mr. Stewart appeared concerned

---

[2] There is no evidence that the defendant, Mr. Stewart, knew Mr. Couget before this incident.

[3] The Rally's employee's statements were not admitted at trial because the employee refused to testify. However, at the hearing on the motions to suppress, Officer Briscoe testified that he and his partner were notified by one of the employees at the location that she observed Mr. Stewart take something of out of the vehicle after the accident.

about the driver's condition.[4]  EMS personnel arrived approximately five minutes after the officers, and Mr. Stewart still remained in the parking lot. According to Officer Briscoe, he asked Mr. Stewart to stop as Mr. Stewart was walking away. Mr. Stewart was not running away, and he was cooperative with Officer Briscoe. When Officer Briscoe asked Mr. Stewart about removing items from Mr. Couget's car, Mr. Stewart replied that he removed the foil packets and threw them on the ground because he did not want Mr. Couget to get into trouble. Officer Briscoe stated that he did not see Mr. Stewart attempt to conceal anything in his pockets or to take anything from his pockets. After Mr. Stewart showed him the foils on the ground, he advised Mr. Stewart of his Miranda rights and handcuffed him.[5]  Mr. Stewart also had a backpack, which Officer Briscoe believed his partner searched.

Officer Jon–Rene Sanjurjo testified that Mr. Couget was still in the driver's seat of the car when they arrived and that Mr. Couget was unconscious but breathing. EMS personnel arrived shortly thereafter. Officer Sanjurjo testified that he found a spoon with crystalized residue and burn marks sitting in a cup in the middle console of the car. He stated that Officer Briscoe stopped Mr. Stewart after speaking with a Rally's employee. According to Officer Sanjurjo, after Mr. Stewart was placed in the police unit, Mr. Stewart repeated the statements he made outside of Mr. Couget's car regarding removing the empty foils from the car. Officer Sanjurjo testified that he retrieved the empty foils after Officer Briscoe pointed them out to him. He also retrieved the napkin with the foils that Mr. Stewart dropped. On cross-examination, Officer Sanjurjo testified that Mr. Couget admitted to EMS personnel that he had just used "a little bit" of heroin.

The parties stipulated that Glenn Guillot, if called to testify, would have been qualified as an expert in narcotics testing and analysis. The parties also stipulated to the contents of Mr. Guillot's report, which stated that the evidence seized tested positive for heroin.[6]

---

[4] Officer Briscoe was the sole witness at the suppression hearing. His testimony at the suppression hearing, with minor exceptions, was similar to his trial testimony.

[5] *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

[6] *State v. Stewart*, 133 So.3d at 167-169 (footnotes in original).

On May 25, 2012, Stewart was found guilty of attempted possession of heroin.[7]    On June 15, 2012, his post-verdict motion for judgment of acquittal was denied and he was sentenced to five years imprisonment.[8]    The State subsequently filed a multiple-offender bill of information.    On October 15, 2012, Stewart pleaded guilty.    The trial court vacated the original sentence and sentenced him to 11 years imprisonment as a second-felony offender.[9]

On direct appeal, Stewart's sole assignment of error was that the trial court erred in denying his motion to suppress the evidence and statements.    On January 22, 2014, the Louisiana Fourth Circuit Court of Appeal affirmed his conviction and sentence.[10]    On September 12, 2014, the Louisiana Supreme Court denied his application for a writ of certiorari.[11]

---

[7] State Rec., Vol. 1 of 4, Minute Entry, 5/25/12.    Couget, who was also charged with possession of heroin, pleaded guilty and was sentenced to four years, suspended, with active probation.    State Rec., Vol. 2 of 4, Sentence of the Court and Guilty Plea Form, 9/28/11.

[8] State Rec., Vol. 1 of 4, Minute Entry, 6/15/12; *see also* Vol. 2 of 4, Sentence of the Court.

[9] State Rec., Vol. 1 of 4, Minute Entry, 10/15/12; *see also* Vol. 2 of 4, Waiver of Constitutional Rights Plea of Guilty Form as a Multiple Offender; Transcript of Multiple Bill Hearing; Sentence of the Court, 10/15/12.

[10] *State v.* Stewart, 2013-KA-0779 (La. App. 4 Cir. 1/22/14), 133 So.3d 166; State Rec., Vol. 1 of 4.

[11] *State v. Stewart*, 2014-KO-0296, 2014-KO-0300 (La. 9/12/14), 147 So.3d 704.

On October 3, 2014, Stewart filed a motion to quash the multiple bill.[12]    The trial court summarily denied the motion on November 3, 2014.[13]    On November 17, 2014, Stewart filed a related application for supervisory writs with the Louisiana Fourth Circuit Court of Appeal.    On January 13, 2015, the appellate court denied relief.[14]

On May 18, 2015, he submitted an application for post-conviction relief with the state district court.    In that application, he asserted that he did not validly waive his right to a jury trial and that he was denied effective assistance of counsel at trial and during sentencing.[15]    On May 22, 2015, the state district court rendered a written judgment denying relief on the merits.[16]    On July 28, 2015, his related supervisory writ application was denied on the merits by the Louisiana Fourth Circuit Court of Appeal.[17]    On September 6, 2016, the Louisiana Supreme Court also denied relief.[18]

---

[12]    State Rec., Vol. 1 of 4, Docket Master Entry (p. 6), 11/5/14 (motion postmarked 10/3/14) State Rec., Vol. 4 of 4, Motion to Quash attached to Louisiana Fourth Circuit Writ No. 2014-K-1405

[13]    State Rec., Vol. 4 of 4, Letter, 11/3/14.

[14]    *State v. Stewart*, 2014-K-1405 (La. App. 4 Cir. Jan. 13, 2015).

[15]    State Rec., Vol. 4 of 4, Application for Post-Conviction Relief.    His statement of claims did not coincide perfectly with his argument in support, but was properly construed by the state district court as asserting these two federal grounds for relief.

[16]    State Rec., Vol. 4 of 4, Judgment, 5/22/15.

[17]    State Rec., Vol. 4 of 4, *State v. Stewart*, 2015-K-0752 (La. App. 4 Cir. July 28, 2015).

[18]    *State ex rel. Stewart v. State*, 2015-KH-1520 (La. 9/6/15), 198 So.3d 1171; State

On or about October 20, 2016, Stewart filed his federal application for habeas corpus relief.[19]   His federal application raises the same grounds for relief presented on state collateral review in his post-conviction relief application.   The State concedes that the federal application is timely.   The State argues that his jury-waiver claim is unexhausted and procedurally defaulted, and also that the claims should be denied on the merits.[20]

**Standards of Review on the Merits**

Title 28 U.S.C. § 2254(d)(1) and (2), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), provides the applicable standards of review for pure questions of fact, pure questions of law, and mixed questions of both.   A state court's purely factual determinations are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2); *see also* 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing

---

Rec., Vol. 4 of 4.

[19]   Rec. Doc. 1, 4, Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus postmarked October 20, 2016, and tendered for filing on October 24, 2016.

[20]   Rec. Doc. 12.

evidence."). With respect to a state court's determination of pure questions of law or mixed questions of law and fact, a federal court must defer to the decision on the merits of such a claim unless that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

The "'contrary to' and 'unreasonable application' clauses [of § 2254(d)(1)] have independent meaning." *Bell v. Cone*, 535 U.S. 685, 694 (2002). A state court decision is "contrary to" clearly established precedent if the state court applies a rule that contradicts the governing law set forth in the United States Supreme Court's cases or if the state court confronts a set of facts that are materially indistinguishable from a decision of the United States Supreme Court and nevertheless arrives at a result different from United States Supreme Court precedent. *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000); *Wooten v. Thaler*, 598 F.3d 215, 218 (5th Cir.), *cert. denied*, 131 S.Ct. 294 (2010). An "unreasonable application" of [United States Supreme Court] precedent occurs when a state court "identifies the correct governing legal rule... but unreasonably applies it to the facts of the particular state prisoner's case." *Williams*, 529 U.S. at 407-08; *White v. Woodall*, 134 S.Ct. 1697, 1706 (2014).

It is well-established that "an unreasonable application is different from an incorrect one." *Bell*, 535 U.S. at 694. A state court's merely incorrect application of Supreme Court precedent simply does not warrant habeas relief. *Puckett v. Epps*, 641 F.3d 657, 663 (5th

Cir.2011) ("Importantly, 'unreasonable' is not the same as 'erroneous' or 'incorrect'; an incorrect application of the law by a state court will nonetheless be affirmed if it is not simultaneously unreasonable.").    "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable" under the AEDPA.    *Harrington v. Richter*, 562 U.S. 86, 102 (2011).    Section 2254(d) preserves authority to issue the writ in cases where there is "*no possibility* fairminded jurists could disagree that the state court's decision conflicts with [United States Supreme Court] precedents."    *Harrington*, 562 U.S. at 102 (emphasis added); *see also Renico v. Lett*, 559 U.S. 766, 130 S.Ct. 1855, 1866 (2010) ("AEDPA prevents defendants—and federal courts—from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts.").

## Analysis

### A.  *Invalid Jury Waiver*

Stewart alleges that his jury waiver was invalid because "the record does not demonstrate nor was the waiver of the jury trial made voluntary nor intelligent the court reversibly erred to the contrary."[21]    He offers no factual support for the conclusory allegation in his federal application.    His argument in the state courts consisted of little more than a conclusory allegation that "nothing in the record showed he was informed by the court or counsel of the right to trial by jury or that he knowingly and intelligently waived

---

[21]  Rec. Doc. 4-1, p. 23.

his right to trial by jury."[22]     The state courts denied the claim on the merits.

The State argues that the claim is unexhausted and procedurally defaulted because he framed the claim exclusively in terms of state law, rather than federal law, when presenting it to the state courts.    The Fifth Circuit has explained the manner in which a claim must be "fairly presented" in order to satisfy the exhaustion requirement:

> A federal habeas petition filed by a state prisoner shall not be granted unless the prisoner exhausts available state remedies. 28 U.S.C. § 2254(b)(1)(A); *Morris*, 413 F.3d at 490. The exhaustion requirement is satisfied when the substance of the federal claim is "fairly presented" to the highest state court on direct appeal or in state post-conviction proceedings, "even if the state court fails to address the federal claim," *Soffar v. Dretke*, 368 F.3d 441, 467 (5th Cir. 2004), or, if the federal claim is not fairly presented but the state court addresses it sua sponte, *Jones v. Dretke*, 375 F.3d 352, 355 (5th Cir. 2004).

> A claim is fairly presented when the petitioner "asserts the claim in terms so particular as to call to mind a specific right protected by the Constitution or alleges a pattern of facts that is well within the mainstream of constitutional litigation." *Kittelson v. Dretke*, 426 F.3d 306, 315 (5th Cir. 2005) (per curiam) (internal quotation marks omitted). "It is not enough that all the facts necessary to support the federal claim were before the state courts or that a somewhat similar state-law claim was made." *Wilder v. Cockrell*, 274 F.3d 255, 259 (5th Cir. 2001) (quoting *Anderson v. Harless*, 459 U.S. 4, 6, 103 S.Ct. 276, 74 L.Ed.2d 3 (1982)); *see also Duncan v. Henry*, 513 U.S. 364, 366, 115 S.Ct. 887, 130 L.Ed.2d 865 (1995) (per curiam) (holding that petitioner did not fairly present federal due process claim by bringing a "somewhat similar" but doctrinally distinct "miscarriage of justice" claim under the California Constitution); *Gartrell v. Lynaugh*, 833 F.2d 527, 529 (5th Cir. 1987) (holding that petition presenting state-law sufficiency challenge fairly presented a federal sufficiency challenge because "the federal and state standards applicable to [petitioner]'s claims are identical, not merely 'somewhat similar'"). "Rather, the petitioner must afford the state court a 'fair opportunity to apply controlling legal principles to the facts bearing upon his constitutional claim.' " *Bagwell v. Dretke*, 372 F.3d 748, 755 (5th Cir. 2004) (quoting

---

[22]   State Rec., Vol. 4 of 4.

*Anderson*, 459 U.S. at 6, 103 S.Ct. 276).

*Johnson v. Cain*, 712 F.3d 227, 231 (5th Cir. 2013).    Although the Fifth Circuit ultimately declared it unnecessary to decide the issue in *Johnson*, the Court noted "precedent suggests that Johnson fairly presented his federal right-to-testify claim in his state habeas petition," citing the following authority:

> The Supreme Court has instructed, albeit in dictum, that labeling a claim as federal, citing the federal source of that claim, or referencing a case deciding such a claim on federal grounds—all of which Johnson did here—is enough to satisfy the fair presentment requirement of AEDPA's exhaustion bar:
>
>> A litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state-court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim "federal."
>
> *Baldwin v. Reese*, 541 U.S. 27, 32, 124 S.Ct. 1347, 158 L.Ed.2d 64 (2004).
>
> Following *Baldwin*, we have demanded less of state habeas petitioners seeking to raise a federal claim, exemplified by *Taylor v. Cain*, 545 F.3d 327 (5th Cir. 2008), where we deemed a claim fair writ and presented although the petitioner "did not label his claim as a federal constitutional one," because "his brief made the type of arguments that support a Confrontation Clause claim" and he cited two Louisiana cases mentioning the federal confrontation right. *Id.* at 333–34; *see also Kittelson v. Dretke*, 426 F.3d 306, 316–17 (5th Cir. 2005) (holding that petitioner fairly presented federal confrontation and due process claims by invoking those concepts and citing the Sixth and Fourteenth Amendments).

*Id.* at 232 n. 4.

Here, although Stewart did not expressly label the claim as a federal constitutional claim or cite any federal law in support, he plainly asserted an argument that implicated

federal constitutional law regarding waiver of the right to trial by jury, and he supported that argument with citations to Louisiana Supreme Court cases that decided the issue based on federal law.[23]    The Court therefore considers the claim to have been fairly presented to the state courts, including the Louisiana Supreme Court, which denied the claim on the merits, and thus it is properly before this Court on federal habeas review.    Furthermore, the Louisiana Supreme Court's decision constitutes an "adjudication on the merits" entitled to deference under 28 U. S.C. § 2254(d)(1), even though that court did not explicitly reference federal case law supporting the decision.    *See Harrington v. Richter*, 562 U.S. 86, 98-99 (2011) ("Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief").

The state court's decision in this case is neither contrary to Supreme Court precedent nor an unreasonable application of federal law.    Stewart seems to imply that because he was not informed of his right to a jury trial he could not validly waive that right.    However, the state court record contradicts Stewart's brief and conclusory argument that "he did not waive his right to a jury trial nor does the record reflect the same."    Contrary to Stewart's assertion in the state courts, the record is not silent regarding his waiver; indeed, it shows that the trial court advised him of his right to trial by jury and he elected to have a trial by judge.    *See Pierre v. Leger*, 495 F. Appx. 403, 406 (5th Cir. 2012) (citing *Boykin v. Alabama*,

---

[23]    State Rec., Vol. 4 of 4, PCR Application at 23.

395 U.S. 238, 243 (1969)).    The waiver is memorialized in a minute entry from the day of trial when Stewart was present with his attorney.[24]    Additionally, multiple docket master entries prior to that date similarly memorialize that he elected a bench trial,[25] which indicates that the trial court addressed the matter on more than one occasion prior to trial with defense counsel and Stewart, who willingly decided on a bench trial and firmly maintained that decision on the morning of trial.    United States Supreme Court precedent does not require that an express colloquy be conducted before a jury waiver can be accepted. *Pierre*, 495 F. Appx. at 410-411.

Stewart's vague and conclusory assertions do not satisfy his burden to establish that his jury-trial waiver was invalid.    *See Adams v. United States ex rel. McCann*, 317 U.S. 269, 281 (1942); *Sowell v. Bradshaw*, 372 F.3d 821, 832 (6th Cir. 2004) ("The burden of demonstrating that a waiver of jury trial was not valid lies with the defendant who waived it").    Merely alleging that the waiver was involuntary, without delineating any supporting reasons, does not suffice.    Stewart asserts no factual grounds to show that his waiver was anything other than voluntary and knowing.    Nor does the record suggest otherwise. Upon review, the Court concludes that the state court's determination that Stewart failed to demonstrate that he did not voluntarily waive his right to a trial by jury, was neither contrary to nor an unreasonable application of clearly established federal law.

---

[24]    State Rec., Vol. 1 of 4, Minute Entry, 5/25/12.

[25]    State Rec., Vol. 1 of 4, Docket Master Entries, 9/28/11, 2/15/12, 5/25/12.

B. *Ineffective Assistance of Counsel*

Stewart asserts that counsel was ineffective during trial for stipulating to evidence and not calling witnesses, and during the multiple-offender proceedings for failing to challenge the multiple bill.    The state courts rejected these claims on the merits.

The United States Supreme Court has established a two-pronged test for evaluating claims of ineffective assistance of counsel. Specifically, a petitioner seeking relief must demonstrate both that counsel's performance was deficient and that the deficient performance prejudiced his defense.    *Strickland v. Washington*, 466 U.S. 668, 697 (1984). A petitioner bears the burden of proof on such a claim and "must demonstrate, by a preponderance of the evidence, that his counsel was ineffective."    *Jernigan v. Collins*, 980 F.2d 292, 296 (5th Cir. 1993); *see also Clark v. Johnson*, 227 F.3d 273, 284 (5th Cir. 2000). If a court finds that a petitioner has made an insufficient showing as to either of the two prongs of inquiry, *i.e*, deficient performance or actual prejudice, it may dispose of the ineffective assistance claim without addressing the other prong.    *Strickland*, 466 U.S. at 697.

To prevail on the deficiency prong of the *Strickland* test, a petitioner must demonstrate that counsel's conduct fails to meet the constitutional minimum guaranteed by the Sixth Amendment.    *See Styron v. Johnson*, 262 F.3d 438, 450 (5th Cir. 2001). "Counsel's performance is deficient if it falls below an objective standard of reasonableness."

*Little v. Johnson*, 162 F.3d 855, 860 (5th Cir. 1998).    Analysis of counsel's performance must take into account the reasonableness of counsel's actions in light of all the circumstances. *See Strickland*, 466 U.S. at 689.    "[I]t is necessary to 'judge ... counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'"    *Lockhart v. Fretwell*, 506 U.S. 364, 371 (1993) (quoting *Strickland*, 466 U.S. at 690).    A petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation.    *See Crockett v. McCotter*, 796 F.2d 787, 791 (5th Cir. 1986); *Mattheson v. King*, 751 F.2d 1432, 1441 (5th Cir. 1985).

To prevail on the prejudice prong of the *Strickland* test, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."    *Strickland*, 466 U.S. at 694.    In this context, a reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Id*. In making a determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial." *Crockett*, 796 F.2d at 793.

Because the state courts rejected his ineffective assistance of counsel claims on the merits and because such claims present a mixed question of law and fact, this Court must defer to the state court decision unless it was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."    28 U.S.C. § 2254(d)(1); *Moore v. Cockrell*, 313 F.3d 880, 881 (5th Cir. 2002).

In fact, the United States Supreme Court has held that, under the AEDPA, federal habeas corpus review of ineffective assistance of counsel claims must be "doubly deferential" in order to afford "both the state court and the defense attorney the benefit of the doubt." *Burt v. Titlow*, 134 S. Ct. 10, 13 (2013) (quoting *Cullen v. Pinholster*, 563 U.S. at 190).

Stewart first claims that counsel was ineffective for entering a joint stipulation with regard to the certificate of analysis, *i.e.*, if called to testify, the expert criminalist would be certified as an expert and testify that the evidence seized tested positive for heroin, thereby allowing the lab analysis report to be introduced into evidence without the testimony of the criminalist.[26]    Stewart has failed to show that the state court made an unreasonable determination when it denied this ineffective assistance claim under *Strickland*.

The stipulation in this case was strategic in nature, served the ends of judicial economy and did not adversely impact the outcome of the case.    The stipulation was plainly reasonable for the sake of expediency and efficiency of the bench trial, and more importantly, did not adversely impact the defense of the case because the fact that the substance was contraband actually played into the defense theory.    The defense's position was that the heroin belonged to Ryan Couget—the unconscious driver found with drug paraphernalia in the wrecked vehicle—not Stewart, a bystander who stopped to help.    The defense argued

---

[26] State Rec., Vol. 3 of 4, Trial Transcript, p. 3 (joint stipulation and introduction of crime lab report).    The Court reviewed the arguments he made in his post-conviction relief application and related writ applications in the state courts in analyzing these ineffective assistance claims.    State Rec., Vol. 4 of 4.

that Stewart only removed the foils, which he recognized as contraband, and threw them on the ground to avoid more trouble for Couget.[27]   The defense maintained that Stewart himself did not buy or possess the heroin and the officers' explanation as to how he was found in possession was illogical.

Stewart implies that the criminalist's testimony could have changed the outcome of the proceedings.   He alleges that "the report does not stem from the substances that were obtained from the Petitioner, but rather obtained from the car that incurred the accident."[28] Even if that were true, the criminalist merely tested the substance and possessed no knowledge of where or how those substances were obtained.   Therefore, he could offer no beneficial testimony in this regard.   His testimony would be limited to the positive results of the analysis.

A court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."   *Strickland*, 466 U.S. at 689.   Here, the results of the report were not contested, and the criminalist's testimony would not have changed the outcome of the proceedings.   Stewart cannot establish prejudice absent showing there is a reasonable probability that, but for counsel's stipulation allowing the certificate of analysis into

---

[27]   State Rec., Vol. 3 of 4, Trial Transcript, pp. 5-8 (opening statement).

[28]   Rec. Doc. 4-1, p. 19.

16

evidence, the result of the proceeding would have been different.    Here, even without the stipulation, the result of the proceeding would have been the same.    Stewart fails to show that it was unsound trial strategy on the part of trial counsel to enter into this stipulation or that doing so had any impact whatsoever on the outcome of the proceedings.    Accordingly, this claim lacks merit.[29]

Next, Stewart argues that defense counsel failed to call a *res gestae* witness.    As the State notes, this is an apparent reference to the Rally's employee who informed police about Stewart's activities at the scene.    He does not suggest how the witness' testimony would be relevant or beneficial to the defense.

In addressing claims regarding uncalled witnesses, the United States Fifth Circuit Court of Appeals has explained:

> Claims that counsel failed to call witnesses are not favored on federal habeas review because the presentation of witnesses is generally a matter of trial strategy and speculation about what witnesses would have said on the stand is too uncertain. For this reason, we require petitioners making claims of ineffective assistance based on counsel's failure to call a witness to demonstrate prejudice by naming the witness, demonstrating that the witness was available to testify and would have done so, setting out the content of the witness's proposed testimony, and showing that the testimony would have been favorable to a particular defense. This requirement applies to both uncalled lay and expert witnesses.

---

[29]  To the extent he may be arguing a violation of state evidentiary law with respect to the admissibility of the certificate of analysis, he would not be entitled to federal habeas relief on such a claim.    It is "not the province of a federal habeas court to reexamine state-court determinations on state-court questions."    *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).

*Woodfox v. Cain*, 609 F.3d 774, 808 (5th Cir. 2010) (citations, quotation marks, and brackets omitted); *see also Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009).    Guided by these principles, the Court concludes Stewart has not made the requisite showing that the state court's decision was unreasonable.

The employee at issue refused to testify at trial.[30]    The prosecution elicited general testimony from Officer Briscoe about the circumstances that led him to approach and question Stewart, without having the officer testify to hearsay.    Defense counsel had no reason to believe that the testimony of this witness would be helpful to the defense. Stewart offers nothing to demonstrate that the witness had any favorable testimony to offer. Nor was the witness available in any event.    Stewart's claim that his trial counsel was deficient for failing to call a *res gestae* witness is conclusory.    He fails to establish that the witness was actually available and willing to testify at his trial or that such testimony would have been favorable to the defense.    For this reason, he fails to show that he is entitled to federal habeas relief on this claim.

Stewart's final claim involves the habitual-offender proceedings.    He faults counsel for failing to challenge the multiple bill of information.    He argues that the multiple bill did not sufficiently allege a predicate felony-theft offense.[31]    The record shows that Stewart ultimately pleaded guilty to the multiple bill as a second-felony offender.    The State points

---

[30]   *State v. Stewart*, 133 So.3d at *2 n. 3.

[31]   State Rec., Vol. 2 of 4, R.p. 108, Multiple Bill of Information.

out that the favorable plea agreement secured by counsel allowed him to avoid a possible sentence as a quadruple offender.[32]    He faced a maximum of 15 years imprisonment as a second-felony offender, and he received a sentence of 11 years imprisonment.    He has not challenged his decision to plead guilty or the advice of counsel in that regard.

Because he pleaded guilty to the multiple bill, the state court record contains no supporting documentation with respect to his prior criminal history.    Thus, his allegation that the prior theft offenses were actually "misdemeanor" theft convictions, which could not be used as predicate felony offenses for the multiple bill, is self-serving and entirely unsupported.    The mere fact that he presumably knew this, but still agreed to plead guilty to the multiple bill as a second-felony offender belies his allegation.    Furthermore, assuming for the sake of argument that the multiple-bill allegations were insufficient because it did not specify "felony" theft, even if defense counsel had successfully moved to quash the existing multiple bill of information, the State would simply have issued a new, proper multiple bill and the ultimate result would be the same, *i.e.*, Stewart still would have pleaded guilty to being a second-felony offender.    *See, e.g.*, *Lindsey v. Cain*, 10-4502, 2011 WL 3861344, at *18 (E.D. La. July 8, 2011), *adopted*, 2011 WL 3861154 (E.D. La. Aug. 31, 2011), *aff'd*, 514 F. Appx. 466 (5th Cir. 2013).    Therefore, no prejudice resulted from counsel's omission.    *Id.*

---

[32]  State's Response, Rec. Doc. 12 at p. 16 n. 32.    *See also* State Rec., Vol. 3 of 4, Trial Transcript, p. 8.    Defense counsel's opening argument included a reference to him being a quad offender.

For the foregoing reasons, Stewart has not demonstrated that the state court's decision rejecting these ineffective assistance of counsel claims was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.

**RECOMMENDATION**

**IT IS RECOMMENDED** that Stewart's application for federal habeas corpus relief be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C. § 636(b)(1); *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[33]

New Orleans, Louisiana, this __23rd__ day of _____August_____, 2017.

**MICHAEL B. NORTH**
**UNITED STATES MAGISTRATE JUDGE**

---

[33]  *Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.